UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUKHVINDER SINGH HAYER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 1:19-cv-00297-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

　　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Supplemental Security Income. The parties have consented to the jurisdiction of the Magistrate Judge for all purposes. (ECF No. 7, 8).

　　　　At a hearing on July 28, 2020, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

**I.　　Medical Opinions**

　　　　Plaintiff claims that the ALJ committed harmful error by giving too little weight to the opinions of three treating physicians: Dr. David Singh, Dr. Bobby Yang, and Dr. Vladimir Royter.

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide clear and convincing reasons that are supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor. *Id.* at 830–31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ cannot reject a treating or examining physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

Here, the medical opinions of the three treating physicians, Drs. Singh, Yang, and Royter, were contradicted by the opinions of a consulting examining physician and a consulting non-examining physician. Accordingly, the Court looks to whether the ALJ provided specific and legitimate reasons that are supported by substantial evidence for rejecting their opinions.

The ALJ discussed the opinion of Dr. Singh as follows:

> Dr. Baldev Singh opined the claimant could lift up to 5-10 pounds rarely and carry up to 10 pounds occasionally. The claimant stand/walk and sit for only 2 hours in an 8-hour workday. Because of pain, he must lie down/recline for 10 minutes before needing to sit up, stand up or walk around. The claimant must take unscheduled breaks every hour for 15 minutes before returning to work. He is unable to climb ladders, scaffolds, ropes or ramps. Dr. Singh further opined the claimant is likely to be unable to complete an 8-hour workday for 5 days or more as the result of his physical and/or mental impairment and/or his need for ongoing and periodic medical treatment and care (Ex. 14F & 23F). The undersigned has considered the opinion of Dr. Singh; however, it appears over restrictive in that Dr. Singh based his opinion on the subjective report of symptoms and limitations provided by the claimant. The frequency with which claimant has sought or required medical treatment, as well as the nature of the treatment rendered does not support the conclusion that he is unable to sustain a regular workday or week. The undersigned accords little weight to this opinion, as it is inconsistent and not

supported by the totality of the medical evidence.

(A.R. 24).

The ALJ discussed the opinion of Dr. Yang as follows:

> Dr. Bobby Yang opined the claimant could only lift up to 5 pounds rarely, but never carry any weight. He must lie down/recline more than 3 hours at one time for a total of 8 hours during an 8-hour workday because of low back pain. The claimant can stand/walk for less than one hour during an 8-hour workday. He would need to take unscheduled breaks many times during an 8-hour workday. He is unable to climb ropes, ladders, scaffolds, or ramps. He would be off-task more than 30 percent of an 8-hour workday. The claimant is likely to be absent from work 5 days or more as the result of his impairment or his need for ongoing and periodic medical treatment (Ex. 22F). This opinion is over restrictive given the totality of evidence, and observation of the claimant during the administrative, and as such it is given little weight, as it is inconsistent with the medical evidence of record as a whole. Dr. Yang appears to have based the opinion on the subjective report of symptoms and limitations provided by the claimant. Further, the level of mental limitations provided is inconsistent with the type of mental health medications prescribed as well as the fact that the claimant received little to no mental health counseling/therapy or other mental health intervention.

(A.R. 24-25)

The ALJ discussed the opinion of Dr. Royter as follows:

> Dr. Vladimir Royter opined the claimant could only lift up less than 5 pounds frequently, 0 pounds 5 pounds [sic] occasionally and 10 pounds rarely. He can carry up to 5 pounds occasionally, 10 pounds rarely. The claimant must lie down/recline for 10 minutes at one time for a total of 3 hours during an 8-hour workday. The claimant can stand/walk for less than one hour during an 8-hour workday. He can sit for 2 hours in an 8-hour workday. He would need to take unscheduled breaks every hour for 20 minutes before returning to work. He is unable to climb ropes, ladders, scaffolds, or ramps. He would be off-task more than 30 percent of an 8-hour workday. The claimant is likely to be absent from work 5 days or more as the result of his impairment or his need for ongoing and periodic medical treatment (Ex. 26F). This opinion is over restrictive given the totality of evidence, and observation of the claimant during the hearing and as such the opinion is given little weight, as it is inconsistent with the medical evidence of record as a whole. The medication side effects that are noted by Dr. Royter are accounted for in the residual functional capacity reducing the exertional demands, allowing for alternating positions during the workday, environmental restrictions and reduced postural demands. Dr. Royter's opinion lacks the longitudinal record to support such absolute restrictions and in that sense, it is internally inconsistent given that he opines claimant has been limited since 2000 however had only

rendered treatment to him for less than 2 years.

(A.R. 25).

As an initial matter, the ALJ does not include any citations for the reasons rejecting these three treating physicians. Nor is there any other place in the ALJ's opinion where she explains the medical evidence she believes contradicts their opinions. Elsewhere in the opinion, the ALJ does summarize three MRIs, (A.R. 23), but does not describe how they contradict these three medical opinions. On the contrary, they appear to support the three opinions insofar as they reveal abnormal findings that worsen over time. (A.R. 516, dated 7/12/13, "The most significant changes occur at the L4-L5 level where there is central spinal stenosis and bilateral neural foraminal stenosis exacerbated by the presence of a 4 mm right paracentral disc protrusion. The combination of these findings is associated with moderate transverse compression of the thecal sac and marked encroachment upon both of the exiting nerve roots."); (A.R. 514, dated 6/26/2015, "Spondylosis with Modic degenerative changes of the endplates and disc bulging at L4-L5 creating moderate central canal and right greater than left lateral recess stenosis."); (A.R. 521, dated 7/17/2017, "There is severe discogenic disease with disc space height loss, cortical endplate irregularities and reactive endplate changes. The canal is mildly narrowed due to a 5 mm broad-based posterior disk protrusion and a congenitally small canal/congenital short pedicles. Both foramina are moderately narrowed the subarticular recesses."). The ALJ also cites to an electromyography study dated May 18, 2016 (A.R. 23), but this too provides further medical evidence of impairment. (A.R. 414, "This electrophysiological study shows evidence of involvement of reduced response amplitudes in motor nerves with prolonged F waves and neuropathic motor unit action potentials suggestive of a lesion proximal to the dorsal root ganglion involving L4-L5 nerve roots suggestive of lumbar radiculopathy with no coexisting evidence of polyneuropathy or myopathy."). Thus, the part of the ALJ's reasoning relying on the medical evidence is not specific and is not supported by substantial evidence.[1]

---

[1] In their briefs and argument, both parties have pointed the Court to various other records not cited by the ALJ. *See e.g.*, A.R. 495 ("calf muscle mild atrophy," and "with no gait abnormality"). As none of these records were explicitly relied on by the ALJ, they are not relevant to the Court's assessment of the ALJ's reasons. Nevertheless, the Court has reviewed the medical records cited by the parties and finds that none of the records appear to clearly support or refute these doctors' opinions.

1 　　　　　The ALJ's next reason for rejecting two of the physicians, Drs. Singh and Yang, is
2 because they were based on "the subjective report of symptoms and limitations provided by the
3 claimant." But, although these two physicians were treating physicians who no doubt listened to
4 Plaintiff's own complaints, the reports are not based solely on reports by the Plaintiff. Dr.
5 Singh's two reports specifically indicate they were based on "History & Medical File," "Progress
6 and office notes," "Physical Examinations," and "X,Rays, CT Scans or MRIs." (A.R. 397, 504).
7 Dr. Yang's report similarly indicates that the opinions were based on "History & Medical File,"
8 "Physical Examinations," "Pain clinic/Neurology." (A.R. 500). This reason is thus not supported
9 by substantial evidence.

10 　　　　　The next reason given is that "[t]he frequency with which claimant has sought or
11 required medical treatment, as well as the nature of the treatment rendered does not support the
12 conclusion that he is unable to sustain a regular workday or week." There is no explanation given
13 regarding the frequency of Plaintiff's treatment or in what way it was deficient. The ALJ's
14 reason is also belied by the three opinions themselves, showing that Plaintiff was receiving
15 treatment from three different physicians, including a specialist in neurology. Plaintiff received
16 three MRIs and an electromyography study. Plaintiff also received medication including
17 "gabapentin 300 mg 3 times a day." (A.R. 505). This reason is also not supported by substantial
18 evidence.

19 　　　　　The ALJ also relies on her "observation of the claimant during the hearing" to reject these
20 opinions. She does not describe what she saw or why it was inconsistent with the physicians'
21 opinions. Moreover, an ALJ's personal observations at the hearing are not substantial evidence
22 for rejecting the opinions of treating physicians. *See Taylor v. Commissioner of Social Sec.*
23 *Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("However, the ALJ's personal observations of
24 Taylor do not constitute substantial evidence for rejecting any of the opinions of Taylor's
25 physicians who have found Taylor psychologically impaired."). Thus, this reason is also not
26 supported by substantial evidence.[2]

---

[2] During oral argument, counsel for the Commissioner argued that the ALJ's reasons were valid because they relied on the consultative examination of Dr. Van Kirk. However, the ALJ did not mention Dr. Van Kirk in her reasons for rejecting the opinions of the treating physicians or describe why Dr. Van Kirk's one-time examination was due more

1     Accordingly, the Court finds that the ALJ's reasons for rejecting the opinions of
2 Plaintiff's three treating physicians were not "specific and legitimate reasons supported reasons
3 that [we]re supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.

## II. Subjective Symptom Testimony

Plaintiff next claims that the ALJ erred in not fully crediting Plaintiff's testimony regarding his symptoms.

A two-step process is employed for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278

---

weight than that of three treating physicians. Moreover, Dr. Van Kirk reviewed no records, including the MRIs and EMG study. (A.R. 407 (noting under "Review of Records," "Allegations: 'Injured back disc, high blood pressure, depression, memory loss, confusion.'")). Especially given the deference due to treating physicians over consulting physicians, Dr. Van Kirk's opinion based on a single examination is not alone a sufficient basis to reject the opinions of three treating physicians, at least without further explanation and reasoning for doing so.

F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Here, the ALJ found objective medical evidence of an underlying impairment. The Court looks, therefore, to whether the ALJ rejected the claimant's testimony about the severity of his symptoms by offering specific, clear and convincing reasons for doing so.

The ALJ stated as follows regarding Plaintiff's symptom testimony:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence of record does not support his allegations of total disability. The claimant's treatment for his impairments has not been so extensive or prolonged that work activity would be precluded for any continuous period of twelve months.
>
> The record is overall inconsistent with total disability. The claimant is able to perform some household chores, drive a car, prepare his own meals, and shop in stores apparently without difficulty or assistance. He is able to take care of his personal hygiene and needs without assistance. The fact that the claimant's work stoppage was because he was "laid off/fired" and not based on medical problems further detracts from the claimant's allegation that he is unable to work owing to his impairments. During a consultative examination, Dr. Van Kirk noted the claimant reported that the main reason his is not currently employed is due to low back pain and left leg pain that began in year 2000. However, he reported that he last worked in marketing in 2012 for approximately one year, but stopped working when he was laid off/fired (Ex. 16F/p.9).
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. This finding is made in light of the medical evidence as discussed below, which has not identified an impairment that would correspond in severity to the claimant's allegation.

(A.R. 22-23).

Much of this reasoning is boilerplate and not specific to Plaintiff, as is apparent by the reference to "his or her symptoms." There is no citation to medical evidence. Although the reasoning references medical evidence discussed later, the only medical evidence specifically discussed consists of the three MRIs and one electromyography study, which as discussed above

1 appear to confirm a substantial medical impairment.

2 The ALJ's reference to Plaintiff's activities of daily living does not provide a clear and convincing reason to discount Plaintiff's testimony.  None of the activities cited, including performing some household chores, driving a car, preparing his own meals, and shopping in stores demonstrate an ability to work a full-time job.  Nor are any of these activities inconsistent with Plaintiff's testimony or allegations of impairment.  Moreover, Plaintiff's testimony about these activities demonstrates that he in fact has difficulty with these activities.  His report on information about daily activities indicated it was "difficult to change" his dress, and difficult to bathe.  He had pain at times when he cares for his hair and uses the toilet.  (A.R. 216).  He does not prepare meals because he cannot slice food.  (A.R. 217).  With these limitations in mind, his activities of daily living do not provide a clear and convincing reason to reject his symptom testimony.

Finally, his work history does not provide a clear and convincing reason to reject his symptom testimony.  According to his testimony and the medical evidence, his condition worsened over time.  His attempts to work with pain prior to that time do not contradict that testimony.

The ALJ thus erred in discounting Plaintiff's testimony regarding his symptoms without setting forth clear and convincing reasons.

### III.    Remand

At the conclusion of Plaintiff's brief, Plaintiff states that "Reversal is warranted and remand for the payment of benefits or, in the alternative, for the correction of legal errors herein." (ECF No. 17, at p. 21).  Although it appears likely that Plaintiff will be entitled to benefits once the opinions of three treating physicians and Plaintiff's own testimony have been credited as true, *see Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014), Plaintiff has not set forth the precise limitations it believes should be included in the RFC and the vocational testimony that would establish disability under those limitations.  Thus, this Court will not remand for an award of benefits.[3]

---

[3] On remand, the ALJ is not entitled to reevaluate the medical opinions or Plaintiff's testimony or attempt to offer

### IV.     Conclusion

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this opinion. The ALJ shall consider whether Plaintiff is entitled to an award of benefits once the opinions of Drs. Singh, Yang, and Royter, as well as Plaintiff's own testimony, are credited as true.

IT IS SO ORDERED.

Dated:  **September 15, 2020**           /s/ Erica P. Grosjean
                                                       UNITED STATES MAGISTRATE JUDGE

---

alternative reasons for rejecting them. Those opinions and testimony shall be credited as true for purpose of evaluating Plaintiff's entitlement to benefits.